**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAMAR BACON, | : | |
| also known as | : | Civil Action No. 06-4910 (PGS) |
| LAMAR ANTWOINE BACON | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHELLE RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

    LAMAR BACON, Petitioner <u>Pro Se</u>
    # 286575-106185C
    South Woods State Prison
    215 Burlington Road South
    Bridgeton, New Jersey 08302

    LINDA K. DANIELSON, ESQ.
    Office of the New Jersey Attorney General
    Division of Criminal Justice - Appellate Bureau
    R. Hughes Justice Complex
    P.O. Box 086
    Trenton, New Jersey 08625
    Counsel for Respondents

**SHERIDAN**, District Judge

    This matter is before the Court on Petitioner Lamar Bacon's petition for habeas corpus relief under 28 U.S.C. § 2254.  For the reasons discussed below, the petition for habeas corpus relief will be denied for lack of merit.

## I.   BACKGROUND

### A.   Statement of Facts

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in its March 5, 1999, unpublished Opinion on petitioner's direct appeal from his conviction:

> The State presented the testimony of Michael Owens, a friend of the victim and eyewitness to the homicide.  Owens stated that on June 27, 1995, he, the victim Nathaniel Easterling, and Shantel Johnson, a woman friend of the victim, drove to Flora Street in Elizabeth.  They drove there in Easterling's Ford Tempo to visit relatives of Johnson.
>
> After leaving the relatives' apartment, the three encountered two men – the defendant and his friend, Aziz Howard.  Johnson and defendant began to argue.  Johnson then crossed the street.  Easterling then told defendant, "[W]e don't have any problem with you."  That notwithstanding, defendant approached to within about two feet of Easterling and began talking.  Owens described defendant's manner as "really aggressive.  He had like, like a lot of rage in him."
>
> Thereafter, Howard screamed something.  Easterling again said conciliatorily, "[W]e don't have any problem with you."  Owens testified defendant reacted to this by saying, "Fuck that, can't be coming around here ... ."  A fight broke out between Easterling and defendant.  Owens could not say who threw the first punch but thought two punches were thrown.
>
> Then, defendant "reached down, pulled up his jacket, and reached down for something."  At that point, Easterling said, "Oh, shit," and then turned and ran.  Owens, two feet behind Easterling at the time, also turned and ran.  As the two ran, Owens heard a "loud bang."  The two men continued their flight for about two blocks.  At that point, the victim said, "Mike, Mike, hide me.  I am hit."  Upon helping the victim behind a car, Owens solicited the help of a

2

neighborhood woman, who agreed to call the police.  Owens
went to a bar where he called 911.

Two Elizabeth police officers came to the scene.  At Owens'
direction, they found the victim.  The victim was
unconscious.  The victim died of internal and external
hemorrhaging from a single bullet wound to the back.

Subsequently, the police interviewed Owens at police
headquarters.  The police showed him a series of
photographs.  Owens made a positive identification of
defendant.  Later in court, he again identified defendant.
He stated there was no doubt defendant shot his friend.  The
record discloses Owens had an opportunity to observe
defendant close up for a prolonged period of time in well-
lighted conditions.

Russine Jones, a teenager who lived in the same building as
Johnson's relatives, also testified.  Although at the time
of the shooting Jones told police he had not seen anything,
a little over a week after the homicide Jones voluntarily
went to the police headquarters and gave a statement.  The
statement, contrary to the one he gave the police the day of
the shooting that he had seen nothing, corroborated some of
what Owens represented had occurred.  Jones testified he was
looking out an apartment window when Easterling, Owens, and
Johnson drove up.  After leaving the window for a period of
time, he returned and saw defendant and Aziz Howard walking
along.  He then saw Easterling, Owens, and Johnson leave the
relatives' building.  Jones heard Johnson say something to
defendant, who responded by saying, "get out of here, don't
come here with that bullshit. ...  Then they was just
arguing."  Jones then left to get his brother, thinking "he
was going to fight."  Just before Jones did, he saw
defendant unzip his jacket and Easterling back up two steps.
As Jones returned to the window, he heard a gunshot and
testified, "I didn't see nobody out there."  Jones related
that he saw no weapon in Easterling's hand prior to the
shooting.

During the course of Jones' extensive cross-examination, the
prosecutor asked for a side bar conference.  At that
conference, the prosecutor represented he saw "a noticeable
difference in the demeanor of [Jones] ever since [an
individual] just walked into the courtroom."  The prosecutor
then stated, although he knew of no specific threats made
against Jones if he testified, he was concerned of possible
intimidation.  The judge conducted an <u>N.J.R.E.</u> 104 hearing
to determine the extent, if any, threats had been made.

At the hearing, Jones testified threats had been made
against him and his sister about giving testimony in the
case.  He was unwilling to identify the person who made the
threats.  He acknowledged he was "[k]ind of" afraid to
testify.  He then explained he first told the police he had
seen nothing the night of the homicide out of fear of
possible threats, although he had received none at the time.
Relying on State v. Gray, 112 N.J. Super. 412 (App. Div.
1970), certif. denied, 57 N.J. 596 (1971), the State
requested the opportunity to present evidence to explain why
Jones changed his representations to the police.  The trial
court granted the application but, prior to allowing the
jury to hear Jones' explanation for his inconsistent reports
to the police, the court gave the jury the following
limiting instructions:

> Members of the jury, if you hear evidence of
> intimidation of Mr. Jones, the witness here, or there's
> concern over his safety or members of his family, I'm
> going to give you a limiting instruction as to how you
> can consider the evidence, and you can consider that
> evidence only for a single purpose and that is Mr.
> Jones's believability in the areas that counsel will
> subsequently argue to you about his believability on
> certain subjects.
>
> If you hear evidence of intimidation from Mr. Jones or
> members of his family, you are specifically instructed
> that you are not to consider that being any ...
> evidence of any consciousness of guilt by ... the
> defendant, and you are not to draw any adverse
> inferences or any conclusions against [defendant]
> because, as far as [the court] know[s], there will be
> nothing in the evidence to tie those actions to
> [defendant].
>
> So you consider it only for the limited purpose of Mr.
> Jones's credibility in the areas that counsel will
> argue and not hold it against [defendant] in any way or
> consider it as any consciousness of guilt on his part.

During its charge, the court reminded the jury

> that reference to threats was made in the testimony of
> one of the witnesses, Russine Jones. [The court] gave
> you an instruction on the subject during the trial, and
> [the court is] now going to repeat in substance to you.
> This is a limiting instruction, and you may only
> consider that testimony about threats for the limited

4

purpose that [the court] allow[s].  You can consider
this testimony only on the issue of credibility of the
testimony of Mr. Russine Jones.  You cannot consider it
with regard to the defendant, that is you cannot
consider it as any evidence of guilt or wrongdoing by
the defendant, nor can you consider it as any evidence
of any consciousness of guilt on the part of the
defendant.  There was no evidence to link these threats
to the defendant, and you cannot in any way for any
purpose consider the reference to such threats as
evidence against the defendant nor could it be used
against him otherwise.

The jury also heard testimony from Aziz Howard, defendant's
mother, and Umar Garner.  The latter initially gave the
police a statement that he saw defendant shoot Easterling.
At trial, however, he recanted claiming he saw nothing.
Defendant's mother also gave a statement to the police that
her son told her he had shot someone, but she later recanted
that statement on the witness stand.  Howard testified he
saw neither defendant nor Garner the night of the homicide.
Howard, however, had given the police a statement after the
homicide in which he admitted being present, observing the
argument and the fight, and seeing defendant draw a gun.
Howard, in his pretrial statement, acknowledged neither
Easterling nor Owens had done anything to provoke defendant,
claiming defendant only fired two shots in the air.

A charge conference was held on July 24, 1996. The State and
defense counsel agreed there should be a passion/provocation
jury charge based on testimony indicating there may have
been punches thrown between the two men just prior to the
shooting.  The court requested the parties respond to its
draft of the parties' factual versions and then try to
narrow the differences between the two versions.  Defense
counsel objected, arguing it would be best for the jury to
render its own interpretation of what happened based on the
evidence and giving the State's version and defense version
of the facts would be inappropriate and prejudicial.

The court then charged the jury on passion/provocation
manslaughter as follows:

> [t]he third element that the state must prove beyond a
> reasonable doubt, if you are to find the defendant
> guilty of murder, is that the defendant did not act in
> the heat of passion resulting from a reasonable
> provocation.

Passion provocation manslaughter is death caused purposely or knowingly that is committed in the heat of passion resulting from a reasonable provocation.  Now, let me explain to you that passion provocation manslaughter has four factors.  Which distinguish it from murder.  In order for you to find the defendant guilty of murder the state need only disprove just one of them beyond a reasonable doubt.  These four factors are as follows:

That there was an adequate provocation, that's number one.  Number two, provocation actually impassioned the defendant.  Number three, that the defendant didn't have a reasonable time to cool off between the provocation and the act which caused death.  And, number four, the defendant did not actually cool off before committing the act which caused death.

. . . .

With regard to the issues of passion provocation manslaughter and self defense there are certain other evidence you should consider as well.

In this case you have heard testimony about an argument between the victim and the defendant as well as about punches being thrown between them.  You may recall the testimony of Aziz Howard, who indicated that the victim staggered back and made a movement which he thought he might be going for a gun.

You should consider this evidence as well as all the other evidence you deem relevant and worthy of belief in accordance with the law that I instruct you as it relates to the charge of passion provocation. ...

By referring to some of the evidence as I just have I am not in any way suggesting to you that this is all the evidence you should consider, that this summary should override your recollection of the evidence, or that you must accept this summary as accurate.  You should not accept anything I say about the evidence if it does not agree with your recollection and understanding.  And I remind you again that you alone are the judges of the facts and of the weight and credibility of the evidence.

To go back one step.  I was talking to you about passion provocation manslaughter and indicating that

6

passion provocation manslaughter has four factors,
which distinguish it from murder.

In order for you to find the defendant guilty of murder
[the] state need disprove only one of these factors
beyond a reasonable doubt.

Now, therefore, first, you must determine whether the
provocation was adequate.  Whether the provocation is
adequate essentially amounts to this: It essentially
amounts to whether loss of self control is a reasonable
reaction to the circumstances.  The provocation must be
sufficient to arouse passions of an ordinary person
beyond the power of his control.  Words which are a
mere insult do not constitute adequate provocation.
When, however, the words and surrounding circumstances
convey a significant threat, even when it does not put
defendant's life at risk, they may provide adequate
provocation.  On the other hand, threat with a knife or
significant physical confrontation might be considered
adequate provocation.

So first you must determine whether the provocation was
adequate.

Second, you must determine whether the defendant
actually was impassioned, that is, whether he actually
lost his self control.

Third, you must determine whether the defendant had a
reasonable time to cool off; in other words, whether
the time between the provoking event and act which
caused death was inadequate for the return of a
reasonable person's self control.

Fourth, you must determine whether the defendant did
not cool off before committing the acts which caused
death[], that is whether . . . he was still
impassioned.

Now, if you find that the state has disproved beyond a
reasonable doubt that there was adequate provocation,
or that the provocation actually impassioned the
defendant, or that the defendant didn't have a
reasonable time to cool off, or that the defendant did
not actually cool off, and in addition to disproving
one of those factors you determine that the state has
proved beyond a reasonable doubt that the defendant
purposely or knowingly caused the death of Nathaniel

Easterling or serious bodily injury resulting in death
of Nathaniel Easterling, you must find the defendant
guilty of murder.

If, on the other hand, you determine that the state has
not disproved at least one of the four factors of
passion provocation manslaughter beyond a reasonable
doubt, but that the state has proved beyond a
reasonable doubt that the defendant purposely or
knowingly caused death or serious bodily injury
resulting in death, then you must find him guilty of
passion provocation manslaughter.

If, however, the state has failed to prove beyond a
reasonable doubt that the defendant acted purposely or
knowingly, or that the defendant's conduct actually
caused death or serious bodily injury resulting in
death, you must acquit the defendant of murder and
passion provocation murder.

After deliberation, the jury returned the verdict that led
to the judgment of conviction under appeal.

(R4, March 5, 1999 Appellate Division Opinion on direct appeal,

at pages 3-11).[1]

---

[1] The state court record submitted by respondents' counsel,
relevant to this matter, is designated by reference to the
Respondents' Exhibits ("R"), as follows:

R1      Petitioner's brief and appendix on direct appeal,
        dated March 31, 1998
R2      Petitioner's pro se supplemental brief on direct
        appeal, date received June 15, 1998
R3      State's responding brief and appendix on direct
        appeal
R4      Opinion, Superior Court of New Jersey, Appellate
        Division, dated March 5, 1999
R5      Petition for certification with appendix, dated
        April 1, 1999
R6      State's letter in lieu of a formal brief in
        opposition to petition for certification
R7      Order, Supreme Court of New Jersey, denying
        certification, dated July 8, 1999
R8      Petition for post-conviction relief ("PCR"), filed
        March 27, 2000
R9      Petitioner's brief and appendix on appeal from
        denial of state PCR petition, dated May 12, 2006
R10     State's letter brief in opposition

B.  Procedural History

    Petitioner, Lamar Bacon ("Bacon"), also known as "Kenny"
Bacon, was indicted by a Union  County Grand Jury on January 24,
1996, on the following charges: (Count One) Murder, contrary to
N.J.S.A. 2C:11-3a(1); (Count Two) Possession of a weapon for an
unlawful purpose, contrary to N.J.S.A. 2C:39-4a; and(Count Three)
Unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5d.

    Bacon was tried before a jury in July 1996, and convicted on
all counts.  On November 15, 1996, the Honorable Edwin R. Alley,
J.S.C., who presided over the jury trial, sentenced Bacon to an
aggregate term of life in prison with 30 years of parole
ineligibility.

---

| | |
|---|---|
| R11 | Petitioner's pro se supplemental brief, dated January 11, 2006 |
| R12 | Opinion, Superior Court of New Jersey, Appellate Division, dated February 16, 2006, affirming denial of PCR petition |
| R13 | Petitioner's letter-petition for certification with appendix, dated February 28, 2006 |
| R14 | State's letter in lieu of a formal brief in opposition to petition for certification on PCR appeal |
| R15 | Order, Supreme Court of New Jersey, denying certification, filed April 13, 2006 |
| R16 | Trial transcript dated July 16, 1996 |
| R17 | Trial transcript dated July 17, 1996 |
| R18 | Trial transcript dated July 18, 1996 |
| R19 | Trial transcript dated July 22, 1996 |
| R20 | Trial transcript dated July 23, 1996 |
| R21 | Trial transcript dated July 24, 1996 |
| R22 | Trial transcript dated July 25, 1996 |
| R23 | Trial transcript dated July 26, 1996 |
| R24 | Sentencing transcript dated November 15, 1996 |
| R25 | Transcript of PCR proceedings dated May 14, 2004 |

On April 21, 1997, Bacon filed a Notice of Appeal to the Superior Court of New Jersey, Appellate Division, <u>nunc</u> <u>pro</u> <u>tunc</u>. Petitioner raised three issues on direct appeal:  (1) trial court erred in jury instruction on passion provocation manslaughter by failing to inform the jury that battery or mutual combat could be adequate provocation; (2) evidence that a witness received threats was not admissible because the chronology of events was such that the threats could not have affected the witnesses' pretrial statement; and (3) it was reversible error for trial court to deny petitioner's request for a <u>Wade</u> hearing considering the suggestive procedures used to obtain out-of-court identification.  The Appellate Division affirmed the conviction and sentence.  Bacon filed a petition for certification with the Supreme Court of New Jersey, which was denied on July 8, 1999.

Bacon then filed a petition for post-conviction relief ("PCR") in state court, on or about March 27, 2000, raising claims of ineffective assistance of counsel and faulty jury instructions.  He filed a <u>pro</u> <u>se</u> supplemental brief alleging additional issues for relief.  A hearing was conducted on May 14, 2004, before the Honorable Stuart Peim, J.S.C.  The PCR court declined to grant an evidentiary hearing.  The PCR petition was denied by Order filed on May 28, 2004.  Bacon appealed.  The Appellate Division affirmed denial of the PCR petition on February 16, 2006.  The Supreme Court of New Jersey denied certification on April 13, 2006.

Bacon then filed this petition for habeas relief under 28 U.S.C. § 2254, on or about October 11, 2006.[2]  Respondents answered the petition on January 17, 2007, and provided this Court with a copy of the relevant state court record for habeas review.  Bacon did not file any traverse or objections to the State's answer.

_____

[2]  Pursuant to the "prison mailbox rule," a habeas petition is deemed filed on the date the prisoner delivers it to prison officials for mailing, not on the date the petition is ultimately filed with the court.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988); see also Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1998) (applying prison mailbox rule set forth in Houston, which dealt with filing of an appeal, to a pro se prisoner's filing of a habeas petition).  Although the Court is unable to determine from the face of the petition the exact date that Bacon handed his petition to prison officials for mailing, Bacon signed the petition on October 11, 2006.  See Henderson v. Frank, 155 F.3d 159, 163-64 (3d Cir. 1998) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition).  Accordingly, the Court finds that October 11, 2006, rather than October 13, 2006 (the date the petition was received in the Clerk's office), was the date this petition was filed for purposes of calculating the timeliness of the petition.

The Court also notes that Bacon had filed an earlier § 2254 habeas petition, on or about July 19, 2006.  See Bacon v. Ricci, et al., Civil No. 06-3448 (WJM).  Bacon withdrew his first petition on October 6, 2006, in response to the September 8, 2006 Order issued by the Honorable William J. Martini, U.S.D.J., pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).

It appears from the record that Bacon timely filed his habeas petition.  The State does not contend that the petition is time-barred.

II.  <u>STATEMENT OF CLAIMS</u>

In his habeas petition, Bacon raises the following grounds for habeas relief:

Ground One: "The state court's ruling on petitioner's ineffective assistance of counsel claim originating from trial counsel's failure to object to a sequential charge and verdict sheet along with appellate counsel's failure to raise issues on appeal was contrary to clearly established federal law and was an unreasonable application of federal law."

Ground Two: "The state court's ruling that petitioner did not receive ineffective assistance of counsel at trial or on appeal where both counsel's failed to address issues concerning the confusing/misleading charge and verdict sheet was contrary to clearly established federal law and was an unreasonable application of federal law."

Ground Three: "The state court's ruling on <u>PCR</u> that petitioner was not prejudiced by the improper jury charge and verdict in which denied petitioner's Sixth Amendment right to a fair trial under the U.S. Constitution was contrary to clearly established federal law and was an unreasonable application of federal law."

Ground Four: "The state court's ruling that the trial court's admission of evidence that a state's witness received threats was error but was cured by a limiting instruction was

contrary to clearly established federal law and was an unreasonable application of federal law."

Ground Five:  "The state court's failure to address petitioner's claims that the state prosecutor's improper assertions and speculation as to why trial counsel failed to call alibi witnesses deprived petitioner of appellate review and his constitutional right to due process under the Fourteenth Amendment of the United States Constitution."

Ground Six: "The state court's ruling on PCR that trial counsel's failure to properly investigate and present alibi witnesses did not deprive petitioner of his constitutional right to a fair trial and effective assistance of counsel was contrary to clearly established federal law and was an unreasonable application of federal law."

Ground Seven: "The state court's ruling denying post-conviction relief for not having raised any substantive constitutional issues when petitioner's inability to present alibi witnesses denied him the right to a fair trial was contrary to clearly established federal law and was an unreasonable application of federal law."

Ground Eight: "The state court's failure to address petitioner's claims of ineffective assistance of counsel on PCR deprived petitioner of appellate review on his claim that trial counsel failed to object to prejudicial testimony and that appellate counsel failed to adequately protect petitioner from

harm incurred was contrary to clearly established federal law and was an unreasonable application of federal law."

Ground Nine: "The state court's ruling that petitioner was not prejudiced by ineffective assistance of counsel resulting from trial counsel's failure to object to prejudicial comments and appellate counsel's failure to raise issue on appeal was contrary to clearly established federal law and was an unreasonable application of federal law."

Ground Ten: "The PCR court's failure to address claims raised in petitioner's pro se brief deprived petitioner of appellate review in violation of his constitutional rights to due process under the Fourteenth Amendment of the United States Constitution."

Ground Eleven: "The state court's ruling that petitioner did not suffer constitutional deprivation resulting from PCR counsel's failure to submit certification of alibi witnesses to PCR court was contrary to clearly established federal law and was an unreasonable application of federal law."[3]

_____

[3]   Pursuant to 28 U.S.C. § 2254(i), "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  Therefore, because this ground for relief rests on an assertion of ineffectiveness or incompetence of petitioner's state PCR counsel, this claim will be dismissed for failure to state a claim of a federal statutory or constitutional deprivation.

Ground Twelve:[4] "The state court's ruling that the denial of a <u>Wade</u> hearing in light of the overly suggestive procedures utilized to obtain the out-of-court identification was not a denial of petitioner's due process rights under the Fourteenth Amendment was contrary to clearly established federal law and was an unreasonable application of federal law."

Ground Thirteen:[5] "The state court's ruling that the jury instructions on passion/provocation manslaughter was not deficient was contrary to clearly established federal law and was an unreasonable application of federal law."

The State answered the petition asserting that several of the claims asserted by petitioner, namely, Grounds A, B, C (Grounds One, Two and Three) and portions of Grounds H and I (Grounds Eight and Nine), are procedurally defaulted. Alternatively, the State contends that petitioner's claims are without merit or do not state a cognizable federal claim involving a federal constitutional violation.

### III.   PROCEDURAL DEFAULT ANALYSIS

The State contends that because the claims asserted by Bacon in Grounds One, Two, Three and portions of Grounds Eight and Nine were determined by the state PCR court and Appellate Division to

---

[4]   Petitioner designates this claim as Ground Eleven.  He has two different Ground Elevens asserted in his petition.

[5]   This claim was designated by petitioner as "Ground Twelve", but because he counted Ground Eleven twice, the claim is sequentially number thirteen.

15

be procedurally barred by New Jersey Rule 3:22-4, this Court should dismiss these claims under the doctrine of procedural default.

A procedural default occurs when a habeas petitioner's federal claim is "barred from consideration in the state courts by an 'independent and adequate' state procedural rule." See, e.g., Carpenter, 296 F.3d at 146; Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996). On habeas review of state prisoner claims, a federal court "will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" Coleman v. Thompson, 501 U.S. 722, 734-35 (1991)(quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)); see also Harris v. Reed, 489 U.S. 255, 266 (1989) (holding that habeas claim was not procedurally defaulted where state court did not clearly and expressly rely on procedural bar as ground for rejecting the claim).[6]  Only a "firmly established and regularly followed state practice" is adequate to prevent subsequent habeas review in federal court.  James v. Kentucky, 466 U.S. 341, 348-351 (1984).  See also Lee v. Kemna, 534 U.S.

---

[6] A state court's reliance on a procedural bar as an alternate holding is sufficient to trigger the "cause" and "prejudice" test.  See United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 440 (3d Cir. 1982).

362, 376 (2002) ("Ordinarily, violation of 'firmly established and regularly followed' state rules ... will be adequate to foreclose review of a federal claim." (citations omitted)). Generally speaking, "[a] state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate." Cabrera v. Barbo, 175 F.3d 307, 312 (3d Cir. 1999) (citations omitted).

Finally, if it is determined that a claim is procedurally defaulted, a federal court may only entertain such claim on habeas review if the petitioner shows either cause to excuse the default and prejudice resulting from the default or that a fundamental miscarriage of justice will result should the federal court fail to hear petitioner's claim. See, e.g., Coleman, 501 U.S. at 750.

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule. See Coleman, 501 U.S. at 752 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation. Coleman, 501 U.S. at 754. Neither a pro se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard. Murray at 485-87. Failure of the

state court to "bend the rules" for a pro se litigant is not cause.  Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir. 1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'"  Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  In the context of an ineffective assistance claim, the Court of Appeals for the Third Circuit has held that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."  Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Carrier, 477 U.S. at 496. "Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him."  Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001)(citing Schlup v. Delo, 513 U.S. 298, 326 (1995)).

Here, the Court finds that the claims raised in Bacon's state PCR proceedings are not procedurally barred, as asserted by the State.  It is clear from the state court PCR proceedings that the trial judge did not rely solely on the application of the state procedural bar under N.J. Court R. 3:22-4 when the court denied the PCR petition.  Indeed, the PCR court discussed at length the merits of Bacon's claims involving the sequential nature of the jury charge on homicide and the testimony relating to petitioner's criminal milieu versus the victim's status as a college student, which were raised in the context of ineffective assistance of counsel claims.  The PCR court expressly determined that the claims lacked merit as well as being procedurally barred under <u>Rule</u> 3:22-4.  Moreover, the Appellate Division affirmed the state PCR court's decision to deny relief on the merits and did not rely solely on a procedural bar.  Therefore, this Court finds that the claims at issue are not procedurally defaulted and the Court may adjudicate those claims on habeas review.

### IV.   <u>STANDARD OF REVIEW</u>

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v.</u>

19

Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Because petitioner is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable

application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the
"contrary to" clause, "a federal court may grant the writ if the
state arrives at a conclusion opposite to that reached by [the
Supreme] Court on a question of law or if the state court decides
a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts."  <u>Id</u>.  Under the
"unreasonable application" clause, a federal court may grant the
writ if "the state court identifies the correct governing legal
principle from [the Supreme] Court's decisions but unreasonably
applies that principle to the facts of [the petitioner's] case."
<u>Id</u>. at 413.  Habeas relief may not be granted under the
"unreasonable application" condition unless a state court's
application of clearly established federal law was objectively
unreasonable; an incorrect application of federal law alone is
not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u>
<u>Werts</u>, 228 F.3d at 197; <u>Matteo v. Superintendent, SCI Albion</u>, 171
F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v.</u>
<u>Brennan</u>, 528 U.S. 824 (1999).

  Consonant with <u>Williams</u>, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it
resolves petitioner's claims.  <u>See</u> <u>Werts</u>, 228 F.3d at 196-97;
<u>Matteo</u>, 171 F.3d at 888-891.  If the federal court determines

that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision. <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result. <u>Id</u>. AEDPA prohibits such *de novo* review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. <u>Id</u>. In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. <u>Id</u>.; <u>see also</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. <u>Chadwick v. Janecka</u>, 312 F.3d 597, 605-06 (3d Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 1000 (2003)(<u>citing</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. <u>See</u> <u>Hameen v. State of Delaware</u>, 212 F.3d 226, 248 (3d Cir. 2000), <u>cert. denied</u>, 532 U.S. 924 (2001); <u>Purnell v. Hendricks</u>, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). <u>See</u>

22

also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

## V.   ANALYSIS

The Court will examine each of petitioner's claims on the merits, pursuant to the standard of review as recited above.

### A.   Jury Charge and Verdict Sheet Claims

In Ground One, Two and Three of his petition,[7] Bacon alleges that the sequential jury charge and verdict sheet on homicide and passion/provocation manslaughter were prejudicial and materially contributed to his murder conviction, and that the jury charge

---

[7] Ground One of the petition asserts error on the part of the PCR court in ruling inconsistently that the claim as to the sequential jury charge should have been raised on direct appeal and that appellate counsel should not have been burdened in raising claims of ineffective assistance of counsel on direct appeal. Ground Two basically asserts ineffective assistance of counsel in failing to object to the sequential jury charge.

and verdict sheet were confusing and misleading because the jurors were forced to consider each charge separately from the murder charge, including the passion/provocation manslaughter charge. He further argues that trial counsel was ineffective for failing to object to the sequential jury charge and verdict sheet, and that appellate counsel was ineffective for failing to raise this claim on direct appeal. Bacon also claims that the PCR court erred in not granting an evidentiary hearing and in finding that petitioner was not prejudiced by trial counsel's failure to object to the allegedly improper charge.

Petitioner did not raise this claim involving the jury charges until his state PCR proceedings. While the PCR court found that the claim was procedurally barred because it should have been raised on direct appeal, the court also determined that the claim had no merit. The PCR court ruled:

> A review of the jury charge and the verdict sheet indicate that this was not a sequential charge. The judge clearly instructed the jury to consider the murder and passion provocation manslaughter together. Moreover, Judge Alley specifically and consistently included the lack of provocation as one of the elements of first-degree murder. The jury was repeatedly instructed that to find the defendant guilty of murder the State had to disprove, beyond a reasonable doubt, one of the elements of adequate provocation. In order to emphasize the importance of considering the murder and passion provocation manslaughter together, the verdict sheet contained both murder and passion provocation under the same heading, No. 1., without any subheadings, and the jury was instructed to consider them together, but to answer guilty or not guilty only on one.

Thus, the defendant's arguments are not factually supported and the cases cited by defendant for the proposition that a sequential charge is invalid are inapposite.

In addition, while the defendant quotes certain portions and words of the charge out of context, the case law is settled that "portions of a charge alleged to be erroneous cannot be dealt with in isolation, but the charge should be examined as a whole to determine its overall effect." State v. Cortland (phonetic), 149 N.J. 456, 473 (1997).

Reading the charge in its totality indicates that the jury charge was neither misleading nor confusing.

Finally, the defendant's other claims related to the charge are also unsound. There is nothing improper about instructing a jury to consider the lesser included offenses after murder and passion provocation. In fact, that's why they are lesser included.

The charge on self-defense was not confusing. Moreover, in instructions on self-defense, the court instructed the jury to consider the applicability of self defense for each form of homicide.

.  .  .

The claim that the jury was misled or confused is speculative and unfounded. The claim that "there is no evidence that the jurors considered all the relevant factors concerning passion provocation" -- defendant's brief at 3 -- has no factual or legal support or validity.

(R25, PCR Transcript dated May 14, 2004, at 76:16-78:25). The

Appellate Division affirmed the PCR court, stating that "[a]fter

carefully considering the record and briefs, we are satisfied

that all of the defense arguments are without sufficient merit to

warrant discussion in a written opinion, R. 2:11-3(e)(2), and we

affirm substantially for the reasons expressed by Judge Stuart

Peim in his particularly thorough oral opinion of May 14, 2004."

(R12, Appellate Division Opinion dated February 16, 1006, at 4).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each

26

element of a crime beyond a reasonable doubt violate the
constitutional rights of the accused).

Where such a constitutional error has occurred, it is
subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at
416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).  "[I]f
the [federal habeas] court concludes from the record that the
error had a 'substantial and injurious effect or influence' on
the verdict, or if it is in 'grave doubt' whether that is so, the
error cannot be deemed harmless."  Id. at 418 (citing California
v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged
instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal
quotations and citations omitted).

Here, the PCR court and the Appellate Division evaluated the
entire trial record and jury charge and found no reversible error
with respect to the jury charges and that the charges did not
have the capacity to produce an unjust result.  Likewise, this
Court finds, after carefully reviewing the trial transcript and
jury charges in whole, that any error as asserted by Bacon with
respect to the jury charges was non-existent, or at the very

27

most, plainly harmless in light of the overall record.  Put simply, petitioner's claim regarding these jury charges is not of constitutional dimension, as argued by respondents.  Moreover, this Court finds that the thorough decision of the PCR court on the issues of the sequential and allegedly misleading jury charges is neither contrary to nor an unreasonable application of the applicable federal law, nor is the decision based upon an unreasonable determination of the facts.  Accordingly, Bacon is not entitled to relief on these claims.

B.  Admission of "Threats" Evidence

In Count Four of the petition, Bacon alleges that the trial court erred in allowing evidence about threats to be submitted to the jury to explain a witness's initial statement to influence its content.  This claim relates to the testimony of Russine Jones at trial.  Bacon raised this argument on direct appeal. The Appellate Division held:

> On the remaining issue raised by counsel, although we find the admission of Jones' testimony of his apprehensiveness of possible threats was error, we conclude it was not reversible error.  The trial court's limiting instruction was immediate, precise, and repeated.  We rely on the jury's "ability and willingness to follow the limiting instruction without cavil or question." State v. Manley, 54 N.J. 259, 270 (1969).
>
> State v. Gray, [112 N.J. Super. 412 (App. Div. 1970), certif. denied, 57 N.J. 596 (1971)], makes witness tampering that precedes testimony admissible to explain a witness's inconsistent statements.  112 N.J. Super. at 417-18.  Gray, however, does not stand for the proposition, as occurred here, a witness's apprehension that threats might occur is admissible to explain inconsistent statements given to the police.  That notwithstanding, because Jones' testimony was only partially corroborative of Owens' eyewitness testimony,

and given the trial court's timely, precise, and repeated instruction that the jury limit the threat apprehension testimony to Jones' credibility alone, we are satisfied the error was not clearly capable of producing an unjust result. In so ruling, we rely on the jury's ability and willingness to follow the limiting instruction without cavil or question.

(R4, Appellate Division Opinion, March 5, 1999, at 12-13).

Again, the respondents argue that this claim is not of constitutional dimension.  While the state appellate court found the admission of the threat testimony to be error, it was not reversible error.  Bacon has not cited any Supreme Court precedent interpreting constitutional law that holds that limiting instructions cannot remedy the problem of the admission of improper evidence.

Moreover, the admission of improper evidence does not amount to a due process violation unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice," Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.), cert. denied, 525 U.S. 840 (1998)(quoting Dowling v. United States, 493 U.S. 342, 352 (1990), or the evidence is "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Dunnigan, 137 F.3d at 125 (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)).  A determination of materiality can be made only in the context of the entire record before the jury. Dunnigan, 137 F.3d at 125.

Finally, it is presumed that a jury will heed limiting instructions to disregard inadmissible evidence "unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." Greer v. Miller, 483 U.S. 756, 767 n. 8 (1987)(citation omitted)(quoting Richardson v. Marsh, 481 U.S. 200, 208 (1987), and Bruton v. United States, 391 U.S. 123, 136 (1968)).

In this case, while the testimony of Jones was important, it was not critical or devastating to petitioner because Jones merely corroborated much stronger eyewitness testimony from Michael Owens, who was present at the scene.  Additionally, the trial court gave immediate and repeated instructions to the jury to limit the threat testimony solely to Jones' credibility. Therefore, this Court finds that the state appellate court's rejection of Bacon's claim as harmless error was not contrary to, or an unreasonable application of, Supreme Court precedent.  This claim will be denied for lack of merit.

C.   Criminal Milieu Testimony

In Grounds Eight and Nine, Bacon asserts prejudicial error when the court allowed testimony from a police detective who said he had seen Bacon numerous times, as well as testimony that Bacon was a part of a criminal environment unlike the victim, who was a college student.  Petitioner also claims ineffective assistance of trial counsel in failing to object to this testimony, and

ineffective assistance of appellate counsel for failing to raise the issue on direct appeal.

These arguments were raised by petitioner in his state PCR proceedings.  The PCR court held that the criminal milieu claim was procedurally barred by R. 3:22-4, because it could have been raised on direct appeal, but was not.  However, the court also determined that the claim had no merit.  Specifically, the court found:

> Negative characterization of the defendant.  Again, this claim is procedurally barred.  Everything necessary to support this claim is in the record.  Defendant did not meet his burden to demonstrate that this issue comes within any of the exceptions.
>
> In addition, the totality of the record does not support the petitioner's contention that "much was made of the fact that people who hung out with Lamar Bacon lived in a crime area and seemed to have no parental involvement."  Defendant's brief at Page 8.
>
> The only citation to the record made by the petitioner for this proposition is in the context of Racine Jones's direct examination about threats allegedly made towards him and his family, where he testified that he lived in a rough neighborhood, without speaking about anyone in particular.
>
> The portion of the transcript cited by petitioner for the proposition that an improper emphasis on the victim's good characteristics denied the petitioner a fair trial and would serve as grounds for reversal are, at most, small, isolated incidents that could not have any appreciable effect on the outcome of the case.
>
> One illustrative example cited by the petitioner is 4-T, Pages 4 to 10.  Within this entire span of pages, the only exchange relating to this issue is in the very beginning of the direct examination of Michael Owens, after he testified that he knew the victim for a long time and that they were so close that they told people they were cousins.  From the transcript:
>
> > Question: Are you presently going to college?

```
Answer: Yes.
Question: Was Nathaniel going to college back in
    November, '95?
Ms. Logan: Objection.
Question: I withdraw the question.
The Court: There is no objection to Mr. Owens going to
    college.
Ms. Logan: No, Your Honor.
```

Another example is petitioner's citation to 7-10, Pages 8-
10.  Again, in the entire span of pages, which covers a
portion of the defense's summation, the only relevant
reference is by Ms. Logan, where she states: "He indicated
to you he was a college student."  This comment was in the
context of an argument that Owens is not entirely unbiased
because he wants to get on with his life after witnessing a
horrible event when his good friend died.

The other instances cited by the petitioner have similar
character and import.  They are of minor nature and of no
real impact on the outcome of the case.

The cases cited by the petitioner are not applicable.  Those
cases deal with prosecutorial misconduct that were extremely
egregious.  For example, in State v. Williams, 113 N.J. 393,
445 (1998), the New Jersey Supreme Court, while reversing a
capital case on other grounds, addressed the issue, noting
that: "The instance of misconduct are so egregious that we
address this matter to ensure that this kind of
prosecutorial excess is not repeated."

There, the testimony of the victim's mother led to the
introduction, over the defendant's repeated and strenuous
objections, of information concerning the victim's marriage
plans and her involvement in a variety of church-related
activities, and the prosecutor made considerable mention of
these facts and their implication during her opening and
closing statements in both phases of the trial, in an
excessively emotional and inflammatory manner.  Id. at 447.

Similarly, in State v. Sims, 140 N.J. Super. 164, 175
(1976), the conduct of the prosecutor on summation was
simply characterized by the court as "outrageous;" where the
prosecutor called the defendants "a pack of wolves;" stated
that he does not represent the state, but rather "you
people, every person in this room;" described the defense
tactics in an excessively derogatory manner, reflecting a
personal enmity; testified about facts outside the record,
despite repeated sustained objections; implied that the
jurors would acquit only if they had no courage; implied

32

falsely that they had mugged an old man they were seen with;
and implied that the defendants had a duty to testify.

This is clearly not the case, or nowhere near it.  The
record does not support a finding that the defendant's
claims on this issue are of constitutional magnitude and
should not be given the preclusive effect of Rule 3:22-4.

Further, a review of the totality of the record does not
support the petitioner's interpretation of the nature and
effect of the cited portions of the transcript within the
context of the entire case.

Finally, these instances do not rebut the presumption of
adequate performance of counsel, nor undermine confidence in
the reliability of the outcome, as required for reversal
under Strickland.

Officer O'Connor's testimony that he observed the petitioner
numerous times in the past.

Officer O'Connor was one of the officers who responded to
Michael Owens' 9-1-1 call.  Officer O'Connor was a very
minor witness in this case.  Owens flagged his patrol car
down as the officer and his partner approached the scene.
The testimony of O'Connor was very insignificant in the
context of the entire case, and in the voluminous record it
takes only 17 pages.  3-T, pages 20-38.

The officer merely responded to the call and conducted only
a very brief initial investigation, consisting of
preliminary steps towards preserving the crime scene. ...

At the very end of the officer's direct testimony, the
following exchange took place:

        Question: Do you patrol that area or did you previously
        patrol that area?
        Answer: Yes.
        Question: Would it be unusual to see a number of people
        out all hours of the night in that particular area?
        Answer: No, it's not.
        Question: Prior to this day, did you know a person by
        the name of Kenny or Lamar Bacon?
        Answer: Lamar Bacon, yes.
        Question: Without going into any details, how many
        times have you seen him in your life prior to this
        date?
        Answer: Numerous.
        Question: Do you see him in court?

```
Answer: No, not offhand.
Question: Do you have any other involvement in this
case other than what you've testified here today?
Answer: No.
Question: Thank you.  Nothing further.
```

The petitioner contends that this testimony is improper and
the only relevant inference of the fact that the officer had
seen Bacon numerous times was that Bacon was an unsavory
character.  The petitioner claims that this compounded the
other negative characterizations of the defendant's
neighborhood and friends.  On that basis, the petitioner
claims that he is entitled to a reversal.

Initially, it should be noted that the petitioner does not
cite any cases supporting the proposition that this fact
pattern requires a reversal.  The cases cited by the
petitioner elsewhere dealing with prosecutorial misconduct
do not deal with this issue.  On the whole, this testimony
was helpful to the defendant.

It should also be noted that police who regularly patrol a
neighborhood know many people in the area; storekeepers,
teenagers, mothers and their kids, people who participate in
athletic leagues.  There is nothing personally prejudicial
about the fact that a police officer knows a particular
person and sees him in the neighborhood.

I will further note that the victim and his friends were
also in the neighborhood at this particular point in time,
and that was also obvious from the testimony in the case
that the victim and his friends were in the neighborhood at
this particular time.

Secondly, this was particularly helpful to the defense
because despite the officer saying that he knew the
defendant, he could not identify him, and that he not only
knew him but saw him on numerous occasions.

Ms. Logan cleverly used O'Connor's inability to ID the
defendant as an illustration of people make mistakes in
identifying other people, while at the same time suggesting
that he knew the defendant merely because this neighborhood
was the officer's area of patrol.
. . .

Mr. Kolano [the prosecutor] did not even bring up Officer
O'Connor's name or testimony in his summation, presumably in
part because Ms. Logan's made this testimony support her
position.

34

The testimony was helpful to the defendant and not to the
state.  The record indicates not only did the defendant fail
to rebut the presumption of strategic choice and assistance
of counsel within a wide range of confidence, but Ms. Logan
was very effective in using this testimony to her client's
benefit.

The petitioner also fails in his burden to show prejudice
under Strickland.  This testimony was extremely helpful to
the defendant.

(R25, May 14, 2004 PCR transcript at 79:16-88:4).

Normally, a writ of habeas corpus will only be granted on
erroneous state evidentiary rulings if the challenged evidence is
a crucial or highly significant factor in the context of the
entire trial.  Thomas v. Lynaugh, 812 F.2d 225, 230 (5th Cir.),
cert. denied, 484 U.S. 842, 108 S. Ct. 132, 98 L.Ed.2d 89 (1987).
However, the erroneous admission of evidence that is relevant,
but excessively inflammatory, might rise to the level of a
constitutional violation.  See, e.g., United States ex rel. Mertz
v. New Jersey, 423 F.2d 537, 539-40 (3d Cir. 1970); Dudley v.
Duckworth, 854 F.2d 967, 972 (7th Cir. 1988), cert. denied, 490
U.S. 1011, 109 S. Ct. 1655, 104 L.Ed.2d 169 (1989); Walker v.
Engle, 703 F.2d 959, 968 (6th Cir.), cert. denied sub nom.
Marshall v. Walker, 464 U.S. 951, 104 S. Ct. 367, 78 L.Ed.2d 327
(1983); Osbourne v. Wainwright, 720 F.2d 1237, 1239 (11th Cir.
1983) (per curiam); Panzavecchia v. Wainwright, 658 F.2d 337,
341-42 (5th Cir. 1981).  Accordingly, the relative probative and
prejudicial value of evidence must be examined in order to
determine whether its admission violated Bacon's right to a fair
trial.

Not every error in balancing probative value against prejudicial effect "amount[s] to error which rises to constitutional dimensions."  See United States ex rel. Mertz, 423 F.2d at 539-40.  In Bisaccia v. Attorney Gen. of New Jersey, 623 F.2d 307 (3d Cir.), cert. denied, 449 U.S. 1042, 101 S. Ct. 622, 66 L.Ed.2d 504 (1980), the Third Circuit identified at what point such an error in balancing might be cognizable in a habeas corpus proceeding.  Where relevant probative evidence "is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law."  623 F.2d at 313 (quoting United States ex rel. Bibbs v. Twomey, 506 F.2d 1220, 1223 (7th Cir. 1974)).  Accord Osbourne, 720 F.2d at 1239 (error in balancing must be of "such magnitude" as to deny fundamental fairness); United States ex rel. Palmer v. DeRobertis, 738 F.2d 168, 171 (7th Cir.) (when probative value of evidence is "greatly outweighed" by the prejudice to the accused, then use of such evidence may "rise to the posture of the denial of fundamental due process"), cert. denied, 469 U.S. 924, 105 S. Ct. 306, 83 L.Ed.2d 241 (1984).  Therefore, only if the inflammatory nature of the reference to the criminal environment so plainly exceeded its evidentiary worth, in this instance, can there be a finding of constitutional error.

        Here, the PCR court found no prejudice to petitioner from the introduction of these various testimonies concerning Bacon's

criminal milieu.  In fact, as to Officer O'Connor's testimony, the PCR court held that the defense counsel used the testimony to petitioner's advantage.  The claims were not of constitutional dimension to warrant a reversal of conviction as asserted by Bacon. Accordingly, the admission of this testimony concerning the criminal environment in which petitioner lived, the fact that the eyewitness was a college student, and Officer O'Connor's terse testimony about having seen Bacon numerous times, but his inability to identify him in court, did not violate Bacon's constitutional right to a fair trial, and therefore does not present a cognizable habeas corpus claim.  Moreover, this Court finds that the state court's rejection of Bacon's claims was not contrary to, or an unreasonable application of, Supreme Court precedent; nor has the petitioner shown that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Consequently, these grounds for habeas relief will be denied for lack of merit.

D.   <u>Jury Charge on "Adequate Provocation"</u>

In Ground Twelve of his petition, Bacon asserts that the trial court gave "bland" instructions to the jury that failed to address specific facts of the case regarding "adequate provocation."  Bacon claims that the omission of specific facts of his case on "adequate provocation" was highly prejudicial and

prevented the jury from connecting relevant evidence to passion provocation.

Bacon presented this claim on direct appeal. The Appellate Division rejected the claim, finding:

> Defendant argues the trial court committed reversible error when it failed to instruct, with reference to the facts, what constituted "adequate provocation." The issue is raised in a plain error context. Defendant acknowledges the court properly instructed the jury on what constituted adequate provocation in general terms. See State v. Mauricio, 117 N.J. 402, 411-14 (1990). However, relying on State v. Concepcion, 111 N.J. 373, 379 (1988), which counsels trial judges to tailor Model Jury Charges to the facts, defendant contends the charge was errant because it failed to apprise the jury specifically that a battery or mutual combat constituted adequate provocation. Essentially, defendant contends a passion/provocation charge is reversibly errant if it fails to instruct the jury as to all events demonstrated by the evidence which could encompass provocation. We disagree with the contention. We find no plain error. We are satisfied the charge was not clearly capable of producing an unjust result. R. 2:10-2. See State v. Gartland, 149 N.J. 456, 473 (1997).
>
> The criteria for resolving this issue are well settled. "Correct charges are essential for a fair trial." State v. Martin, 119 N.J. 2, 15 (1990). "A charge is a road map to guide the jury, and without an appropriate charge a jury can take a wrong turn in its deliberations. Thus, the court must explain the controlling legal principles and the questions the jury is to decide." Ibid. Jury charges, however, must be examined as a whole. "'[P]ortions of a charge alleged to be erroneous cannot be dealt with in isolation but the charge should be examined as a whole to determine its overall effect.'" Gartland, supra, 149 N.J. at 473 (quoting State v. Wilbely, 63 N.J. 420, 422 (1973)).
>
> The charge, taken as a whole, could not have misled the jury. It properly delineated the controlling legal principles on adequate provocation. See State v. Mauricio, supra, 117 N.J. at 411-14. It gave the jury ample opportunity to consider fully whether defendant had adequate provocation to shoot Easterling in the back. That the charge did not specifically state, along with other examples that were given, that any battery or mutual combat may be sufficient provocation does not amount to reversible error.

> Neither <u>Concepcion</u> nor its progeny dictate the hyper-
> technical argument urged, particularly given defense
> counsel's objection to specific fact tailoring of the
> charge.  Simply put, we find nothing in the charge that
> takes on a character of being capable of producing an unjust
> result.

(R4, Appellate Division Opinion, dated March 5, 1999, at 11-12).

As stated earlier in this Opinion, at Section V.A., jury instructions generally cannot be the basis for granting habeas relief.  <u>See</u> <u>Grecco v. O'Lone</u>, 661 F. Supp. 408, 412 (D.N.J. 1987)("[q]uestions concerning [jury] instructions are normally matters of state law and are not cognizable in federal habeas corpus review").  Federal courts may step in only to rectify wrongs of constitutional magnitude.  <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 109 (3d Cir. 1997).  Moreover, even if a claim of constitutional error is advanced by petitioner concerning the jury charge, habeas relief may not be granted unless the "ailing jury instruction by itself so infected the entire trial that the resulting conviction violated due process."  <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1993).

Additionally, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977).  Specifically, in this case, the Appellate Division determined that the trial court's instruction on adequate provocation "properly delineated the controlling principles" and "gave the jury ample opportunity to consider fully whether [Bacon] had adequate provocation to shoot Easterling in the back."  Further, the reviewing court

39

found no basis for Bacon's "hyper-technical" argument in light of the fact that his defense counsel objected to specific fact tailoring in the jury charge overall.  Thus, taken as a whole, the jury charge could not have misled the jury.  Consequently, the omission of specific fact tailoring on adequate provocation now sought by petitioner (and which appeared to be expressly abandoned by defense counsel by choice with respect to the jury charges overall), was plainly harmless.  This Court finds no error of constitutional dimension.  Therefore, this claim will be denied for absence of merit.

E.   Denial of a Wade[8] Hearing Issue

Next, in Ground Eleven of his petition, Bacon claims that he was denied a fair trial and was prejudiced by the "suspicious and questionable presentation of the photo array," and the suggestive nature of witnesses' out-of-court identifications.  He asserts that it was error for the trial court to deny him a hearing on the admissibility of these out-of-court identifications.

The State counters that petitioner has failed to establish that the trial court's determination in this regard was contrary to, or an unreasonable application of Supreme Court precedent in Watkins v. Sowders, 449 U.S. 341, 349 (1981), which held, as to a pretrial hearing on the admissibility of identification evidence, that the Constitution does not "require[] a per se rule compelling such a procedure in every case."

---

[8]   United States v. Wade, 388 U.S. 218 (1967).

An accused is entitled to due process protection against the introduction of evidence of, or tainted by, unreliable identifications elicited through an unnecessarily suggestive photographic array.  United States v. Ash, 413 U.S. 300, 320 (1973); Manson v. Brathwaite, 432 U.S. 98, 110-17 (1977); Simmons v. United States, 390 U.S. 377 (1968) (due process prohibits in-court identification if pre-trial identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification").

The Supreme Court has recognized that "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." Simmons, 390 U.S. at 383.  The Court has identified certain procedures that heighten the risk of misidentification, including such practices as displaying the photo of only a single individual who generally resembles the person the witness saw, showing the witness photos of several persons among which the photograph of a single individual recurs or is in some way emphasized, or indicating to the witness that police have other evidence that one of the persons pictured committed the crime.  Id.  Despite the risk of misidentification, the Supreme Court has not prohibited the employment of photographic identification methods, either in the exercise of its supervisory power or as a matter of constitutional requirement.  Id.  Instead, the Court has required that each case must be considered on its own facts and must be evaluated in

41

light of the totality of surrounding circumstances; also, the Court has noted that the risk of conviction based on photo misidentification "may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." Id.

Where a trial court has failed to exclude identification evidence obtained in violation of a defendant's due process or Sixth Amendment rights, the habeas court must determine whether the failure to exclude that evidence was harmless constitutional error under Chapman v. California, 386 U.S. 18 (1967). See Moore v. Illinois, 434 U.S. 220, 232 (1977).

The Court of Appeals for the Third Circuit has explained that the

> Simmons/Stovall[9] inquiry is essentially two-pronged. The first question is whether the initial identification procedure was "unnecessarily" or "impermissibly" suggestive. This inquiry actually contains two component parts: "that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures." If a procedure is found to have been unnecessarily suggestive, the next question is whether the procedure was so "conducive to ... mistaken identification" or gave rise to such a "substantial likelihood of ... misidentification" that admitting the identification would be a denial of due process.

United States v. Stevens, 935 F.2d 1380, 1389 (3d Cir. 1991)

(citations omitted) (emphasis added by Third Circuit).

---

[9]    Stovall v. Denno, 388 U.S. 293 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314 (1987).

Here, petitioner contends that the trial court should have
held a hearing to determine the admissibility of identifications
made on allegedly "suspicious" and "suggestive" photo arrays,
pursuant to United States v. Wade, 388 U.S. 218 (1967).  Counsel
argued before the start of trial that the identification
procedures were questionable.  First, as to one individual, Aziz
Howard, he was shown only one photograph, essentially equivalent
to a mug shot, to confirm Howard's information to police that
Bacon was the person he knew as "Kenny".  Second, five other
persons, Shantel Johnson, Michael Owens, Umar Garner, Russine
Jones, and Cassandra Owens, were shown a photo array consisting
of six photographs, including one of petitioner.  Counsel argued
that the photos used were mug shots, the individuals were clearly
not the same age, two of the photos contained very dark-skinned
individuals despite the description of the shooter as medium to
light skinned, and there is no indication as to what order the
photos were displayed to each witness for identification.  (R16,
July 16, 1996 Trial Transcript at 20:15-25:4).

In denying the request for a Wade hearing, the trial court
stated:

> The defendant has requested a Wade hearing pursuant to
> United States v. Wade, 388 U.S. 218 (1967).  The state has
> objected the [sic] under State v. Ortiz,[10] saying that the
> threshold must be passed by the defendant, which the
> defendant has not established and that is [sic] there must
> be some evidence of [an] impermissible suggestiveness.

---

[10]   State v. Ortiz, 203 N.J. Super. 518 (App. Div.), certif.
denied, 102 N.J. 335 (1985).

I have given careful consideration to the contentions made
on behalf of Mr. Bacon, and I'm satisfied that under the
totality of the circumstances there is no evidence of
impermissible suggestiveness either in the six photo array
represented by exhibits S-2A through F for identification or
in the single photo that was evidently shown to Mr. Aziz
Howard, which has been marked S-1 for identification.

So your request for a Wade hearing is not granted.  It's
denied.  This is not because of the state's argument we
shouldn't spend the time on it, because if the threshold has
been passed, the defendant established her right to spend
whatever time we needed and if I probably deny the Wade
hearing a lot more time is wasted reconstructing and then
correcting the error.  So this is not a ruling done entirely
on the submissions at all.  It is only my feeling the test
laid down by Ortiz has not been satisfied and that's my
basis for denying the Wade hearing.

(R16, July 16, 1996 Trial Transcript at 37:9-38:9).

In Watkins v. Sowders, the Supreme Court held that a state

criminal trial court is not constitutionally compelled to conduct

a hearing outside the presence of a jury whenever a defendant

contends that a witness' identification of defendant was

improperly obtained.  449 U.S. at 349.  The Court opined that:

Where identification evidence is at issue, however, no such
special considerations justify a departure from the
presumption that juries will follow instructions.  It is the
reliability of the identification evidence that primarily
determines its admissibility.  And the proper evaluation of
evidence under the instructions of the trial judge is the
very task our system must assume juries can perform.
Indeed, as the cases before us demonstrate, the only duty of
a jury in cases in which identification evidence has been
admitted will often be to assess the reliability of that
evidence.

Id. At 347.  The Court further noted that counsel can both

cross-examine an identification witness and argue in summation to

cast doubt as to the accuracy of the identification as well as the suggestibility of the identification procedure.  Id. at 348.

This Court finds that the trial court did not violate Bacon's right to due process simply by denying him a Wade hearing on the identification witnesses.  The trial court expressly found that petitioner did not meet the threshold showing for a hearing, that is, petitioner did not demonstrate that the police procedures used in the identification by photo arrays were impermissibly suggestive.  It was shown that Aziz Howard, the witness shown only one photograph, had known Bacon for a few months before the murder.  (R16 35:2-16).  Moreover, the other witnesses who were shown the six photo array, with the exception of Michael Owens, also knew Bacon before the murder.  For instance, Russine Jones had known petitioner for several months before the murder and saw Bacon almost every day.  Umar Garner had known Bacon for several years.  When an eyewitness knows the defendant or has seen the defendant on several occasions prior to the alleged crime, this independent knowledge may overcome any subsequent suggestive identification procedure.  See, e.g., United States v. Farries, 328 F. Supp. 1034, 1041 (M.D. Pa. 1971), aff'd, 459 F.2d 1057 (3d Cir. 1972), cert. denied, 409 U.S. 888 (1972).

Here, there was no evidence shown by petitioner that the photo arrays were unduly suggestive, as the six photos included individuals with similar characteristics.  (R16, 33:20-34:21).

Moreover, the trial court gave the jury pertinent and proper instructions on the issue of identifications.  (R22, July 25, 1996 Trial Transcript at 84:11-86:17).  There is no dispute that defense counsel was afforded the opportunity to cross-examine the witnesses as to the reliability of their identifications.  Thus, under Watkins v. Sowders, there were no circumstances shown in this case to compel a Wade hearing; defense counsel had ample opportunity to cross-examine the witnesses as to the accuracy of their identifications as well as the reliability of the identification procedures and the trial court properly charged the jury on identification.  Therefore, this Court finds that the trial court's denial of a Wade hearing did not result in a decision that (1) was contrary to clearly established federal law, (2) involved an unreasonable application of clearly established federal law, or (3) was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  The state court correctly identified and applied the governing legal rule and reasonably determined the applicable facts.  Accordingly, this claim for habeas relief will be denied for lack of merit.

F.   Ineffective Assistance of Counsel

     The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment

violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005), cert. denied, Jacobs v. Beard, 126 S.Ct. 479 (2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, petitioner must also show that counsel's substandard performance actually prejudiced his defense.  Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697.  See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, Bacon raises several claims of ineffective assistance of counsel: (1) that trial counsel was ineffective for failing to object to the jury charge on murder, passion provocation manslaughter, and other lesser-included offenses of manslaughter, and that appellate counsel was ineffective for failing to raise this claim on direct appeal, see Grounds One, Two and Three; (2) that trial counsel was ineffective in failing to investigate and present alibi witnesses, see Grounds Six and Seven; and (3) that trial counsel was ineffective based on her failure to object to testimony about petitioner's criminal milieu, and that appellate counsel failed to raise this claim on direct appeal, see Grounds Eight and Nine.  Bacon presented these

48

claims in his state PCR proceedings, and the PCR court denied relief, finding that petitioner did not establish a prima facie case for any of his ineffective assistance of counsel claims. The Appellate Division affirmed the PCR court's ruling on appeal.

This Court has thoroughly reviewed the state court record, including the trial transcripts and PCR proceedings, and finds that petitioner has failed to establish either deficient performance by trial counsel and appellate counsel, or any resulting prejudice sufficient to change the outcome of the trial.

1.  *Failure to Object to Jury Charges*

In subsection A. of this Opinion, this Court concluded that the state court rulings with respect to the jury charges on murder and the lesser-included offenses were not contrary to, nor an unreasonable application of federal law.  Moreover, the Court determined that Bacon failed to demonstrate that the jury charges on murder and lesser-included offenses were errant, or that any deficiency in the jury charges were of constitutional dimension.

The PCR court also dismissed Bacon's ineffective assistance of counsel claim on these grounds, stating that there was no merit to petitioner's contentions.  Specifically, the PCR court held:

> Finally, in light of the merits of these claims, there is an inadequate showing of prejudice under the <u>Strickland</u> test. There is nothing in the jury charges that undermine the confidence in the outcome.  This is so even without the application of a principle that "assessment of prejudice

49

should proceed on the assumption that the decision maker is
reasonably, consciously, and impartially applying the
standards that govern the decision." Id. at 695.

Additionally, even though under Strickland failure to show
prejudice vitiates the need to consider performance, there
is not even a prima facie case here that either appellate or
trial counsel were ineffective in not raising these claims,
all of which I find to be without merit.

(R25, PCR transcript at 79:1-15).

Consequently, this habeas claim fails because Bacon cannot

prove the prejudice prong under Strickland, or show that any

alleged error by counsel was so serious as to deprive petitioner

of a fair trial or that a different outcome would have resulted

otherwise.   Bacon also has not shown that the state court

decision, when evaluated objectively and on the merits, resulted

in an outcome that cannot be reasonably justified.   Matteo, 171

F.3d at 891.   Nor was the state court rulings contrary to

established federal law set forth in Strickland.   Indeed, the PCR

court very carefully set forth the two-part test under

Strickland, and discussed at length the standard set forth by the

Supreme Court in Strickland.   (R25, PCR transcript at 57:7-64:1).

Therefore, this claim will be denied.

2.   *Failure to Object to Criminal Milieu Testimony*

Likewise, this Court found no merit to Bacon's claims that

trial testimony about the eyewitness' college background and

Officer O'Connor's limited comment about having seen Bacon

numerous times before the murder, were prejudicial in showing

that petitioner had an unsavory character or criminal associative

50

background, thus violating his right to a fair trial.  <u>See</u>
subsection V.C. of this Opinion, <u>supra</u>.

The PCR court found that the subject testimony was of short
duration and minimal in contrast to the lengthy trial record and
testimony of others.  Thus, relying on its determination that the
testimony was fleeting and not egregious or inflammatory in
nature, and did not necessarily imply that Bacon was part of a
criminal environment, the PCR court held that these instances
alleged "do not rebut the presumption of adequate performance of
counsel, nor undermine confidence in the reliability of the
outcome, as required for reversal under <u>Strickland</u>.  (R25, PCR
transcript at 83:12-15).  Moreover, the PCR court found Officer
O'Connor's testimony to be helpful to petitioner because trial
counsel made this testimony support her position and the state
did not even mention the Officer's testimony in summation.  Thus,
"[t]he record indicates not only did the defendant fail to rebut
the presumption of strategic choice and assistance of counsel
within a wide range of confidence, but Ms. Logan was very
effective in using this testimony to her client's benefit."
(R25, PCR transcript at 87:21-88:1).  Consequently, there was no
showing of prejudice.

Based on careful review of the entire trial record, this
Court finds no deficient performance by either trial counsel, or
appellate counsel in failing to raise this meritless claim on
direct appeal.  More importantly, however, Bacon cannot

demonstrate any prejudicial impact, that is, a different outcome would have resulted if counsel had sought to strike such testimony.  Indeed, counsel used the testimony to petitioner's benefit.  Therefore, Bacon has not shown that the state PCR court rulings, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Nor was the PCR court's decision contrary to established federal law set forth in <u>Strickland</u>.  These ineffective assistance of counsel claims will be denied accordingly for lack of merit.

   3.   *Failure to Investigate and Present Alibi Witnesses*

      Finally, Bacon claims that his trial counsel was ineffective for failure to adequately investigate and present alibi witnesses, namely, three witnesses, Lucene Mars, Fabian Bowers, and Henry McLane.  In his PCR proceedings, Bacon argued that his trial counsel deliberately sabotaged his defense, by disregarding Bacon's representations about the alibi witnesses.  Bacon further argued that there was a hostile relationship between him and counsel, and that counsel informed the alibi witnesses that they were not needed despite petitioner's protests.  Bacon also states that trial counsel tried to coerce one of the witnesses to give false testimony, and that witness refused to testify.  The PCR court rejected Bacon's claims, finding no deficient performance, and no resulting prejudice.  In particular, the court found:

52

No supporting affidavits from any of these [alibi] individuals are provided.  The only support for these claims is hearsay evidence in the form of the investigative memos addressed to petitioner's counsel by her investigator.

These reports describe the substance of video conference interviews of the three proposed witnesses.  A copy of these reports are located or attached to petitioner's brief at PA-60-67.

With respect to Bowers and McLane, who are brothers, the petitioner's claim is without merit.  There is no question that these individuals were interviewed by Ms. Logan.  As the state points out, both of them had criminal records which would have affected their credibility, and also would have had the potential of indicating to the jury something that the counsel for the defense harps on quite extensively in argument and in papers here that it would show that the defendant was hanging out late at night with people who are criminals.

Particularly potentially harmful to the defendant, as noted for the alibi witnesses -- the alibi witnesses puts him in the company of convicted felons.  Moreover, assuming that the investigative reports are accurate, the statements that these two individuals would have made are replete with contradictions.

A careful review of the other testimony indicates a number of major contradictions.  For example, Mr. Bowers says at after approximately five to ten minutes Mr. Bowers said he heard a shot and then a horn constantly going off.  Mr. McLane says two minutes later he heard shots being fired.  When asked, Mr. McLane said that he did not hear a horn going off.

Mr. Bowers says they all walked to see what was happening and they saw a girl lying across the steering wheel of the car, causing the horn to go off.  Mr. McLane said they all walked down to where the shooting occurred but did not see anything.

Another example.  Mr. Bowers said they stood around and the police came.  The police asked them what they [saw], and they said they saw nothing.  Mr. McLane said police cars came and started to lock people up.  That included himself, Aziz Howard, Umar, and several others, of which he cannot remember their names.  And the contradictions go on.

Defendant has not overcome his presumption that this was a strategic decision.  He has not met his burden that the counsel's representation fell below objective standards of reasonableness.  This comes well within a reasonable strategic decision.

Similarly, with regard to Mr. Lucene Mars, he is in an identical situation to the other two alleged alibi witnesses in that he has a prior criminal record and his testimony is inconsistent with Bowers and McLane.

I would go on to say that even viewing the facts about Mr. Mars most favorably to the defendant, the Court cannot accept as true Mr. Bacon's alleged explanation that Ms. Logan refused to interview or call Mr. Mars because, allegedly, "She said that she's not going to call anyone who would say that I committed the crime."

Such a response to an alleged request "to call as a witness Lucene Mars to repute the story of Umar Garner" does not make sense, even in the light most favorable to the defendant.  Umar Garner's written statement to the police was that he saw Mr. Bacon shoot the victim as he and his friends were running away from him.

Thus, if Mr. Mars was supposed to rebut Garner's testimony, he could not have said that the defendant committed the crime.  Accordingly, Ms. Logan could not have responded to the defendant in the way the defendant claims he did.

Consequently, for the purposes of determining whether a prima facie showing has been made the Court takes as true the allegations that the petitioner told Ms. Logan that Mars could rebut Garner's testimony; two, Mars would have testified that he saw Bacon walking towards him when the gunshot was fired; and three, Ms. Logan had not interviewed Mr. Mars.

However, these facts taken alone, when taken in conjunction with the rest of the record, could not establish a reasonable likelihood of success under the Strickland/Fritz two-prong test of ineffectiveness because they neither establish substandard performance nor establish the requisite prejudice.

As for the performance prong, the court in Strickland held that "When a convicted defendant complains of the ineffective assistance of counsel, the defendant must show that counsel's representation fell below an objective

standard of reasonableness.  Insofar as this standard
applies to the duty to investigate, the Strickland court
explained that:

"What investigation decisions are reasonable depends on
critical information received from the defendant. For
example, when the facts that support a certain potential
line of defense are generally known to counsel is what the
defendant has said, the need for further investigation may
considerably be diminished or eliminated altogether."
Strickland at 690-91.

Thus, the Strickland court only recognized a duty of
reasonable investigation, not an absolute duty to
exhaustively investigate every lead suggested by defendant.

For these reasons, the application is denied.  The
application for a hearing is denied.

(R25, PCR transcript at 88:7-92:18).

On appeal, the Appellate Division affirmed the PCR trial

court for the reasons set forth in the PCR court's "particularly

thorough oral opinion of May 14, 2004."  (R12, Appellate Division

Opinion, dated February 16, 2006, at 4).

Based on this Court's review of the trial and PCR record,

there is no merit to petitioner's claim that his trial counsel

was ineffective in failing to investigate and present alibi

witnesses.  Despite Bacon's protests to the contrary, the record

shows that counsel did investigate the witnesses identified by

defendant.  Moreover, the record also shows that the decision not

to present these witnesses was based on sound and reasonable

strategy.  Not only did the witnesses have criminal records that

would affect their credibility, their proposed testimony was

critically contradictory from one another.  Consequently, this

55

habeas claim fails principally because Bacon cannot show
deficient performance.

Nevertheless, it would appear, that Bacon does not simply
argue that counsel failed to investigate and present alibi
witnesses, but that counsel disregarded petitioner's request to
use these alibi witnesses mainly because of a hostile
relationship that had developed between petitioner and counsel
during defense preparation.  Again, this argument fails to show
any deficient performance by counsel.  The facts in the record
plainly show that the alibi witnesses would have been detrimental
to Bacon if they testified at trial.  Thus, the hostility between
counsel and petitioner actually was based on their disagreement
as to trial strategy.  There is nothing to suggest that counsel
was purposely trying to sabotage petitioner.

More importantly, however, even if this Court accepts
petitioner's claim that counsel's performance may have been
deficient, Bacon cannot prove the prejudice prong as required
under Strickland.  The evidence of Bacon's guilt was quite
overwhelming.  Michael Owens testified to Bacon's shooting of
Easterling, and other witnesses, namely Jones and Johnson,
testified that they saw Bacon unzip his jacket and Easterling
back up.  Even petitioner's mother had given a statement to the
police implicating Bacon in the murder, although she recanted at
trial to little effect.  Consequently, the testimony of the three
alleged alibi witnesses, who were at extreme risk for impeachment

56

based on their criminal records and contradictory stories, would have had little to no likelihood of changing the outcome of the trial.

Therefore, this Court finds that the PCR court and Appellate Division decisions on this issue were not contrary to clearly established federal law, nor did they involve an unreasonable application of the clearly established federal precedent under Strickland.  Further, the state court decisions were not based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Therefore, this claim will be denied for complete lack of merit.

G.   No Basis for an Evidentiary Hearing

In Ground Five of his petition, Bacon asserts that the state PCR and appellate courts erred in denying him an evidentiary hearing with respect to the ineffective assistance of counsel claims.  The State argues that this claim is not cognizable because allegations of infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"), cert. denied, 526 U.S. 1065 (1999).

As demonstrated above, Bacon failed to establish a prima facie case of ineffective assistance of counsel that would warrant a full evidentiary hearing.  Indeed, the Appellate

Division expressly held that "there was no basis for a testimonial hearing on Bacon's claim that his attorney provided inadequate representation by not calling the so-called alibi witnesses." (R12, Appellate Division Opinion, dated February 16, 2006 at 5).

Errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. See, Hassine, 160 F.3d at 954. Furthermore, as a general rule, matters of state law and rules of procedure and evidence are not reviewable in a federal habeas petition. The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. at 67-68.

Here, it appears that Bacon is arguing that the PCR court's denial of an evidentiary hearing violated due process. Thus, the appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991). "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). An error is not harmless if

"it aborts the basic trial process or denies it altogether."
Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S.
570, 578 n.6 (1986)).

In this case, a careful review of the PCR proceedings and
the state court rulings confirm that Bacon failed to establish a
prima facie case of ineffective assistance of counsel that would
have allowed the state court to grant an evidentiary hearing.
The Court finds that the state PCR court committed no error of a
constitutional dimension.  Further, there is no showing that the
state court determinations "resulted in a decision that was
contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of
the United States," or "resulted in a decision that was based on
an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding."[11]  Williams,
529 U.S. at 412-13.  Therefore, this claim is denied for lack of
merit and for failure to show deprivation of a federal
constitutional right.

---

[11]   The PCR court expressly held that none of the
ineffective assistance of counsel claims satisfied the Strickland
standard.

H.  <u>PCR Court Did Not Deny Appellate Review</u>

In the final claim (Ground Ten) for this Court to consider, Bacon alleges that the PCR court denied him full appellate review because the court allegedly heard only the issues raised by Bacon's counsel and not the issues set forth in petitioner's <u>pro se</u> brief.  This claim must be denied because it is wholly lacking in merit.  Indeed, the PCR record shows that all of the issues submitted by Bacon in his pro se brief were either made part of his counsel's brief or presented at oral argument, or withdrawn by petitioner at the PCR hearing.[12]  (R25, PCR transcript at 10:17-11:24).  Because Bacon has not demonstrated any claim of constitutional magnitude, this ground for habeas relief will be denied accordingly.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus,

_____

[12]  Petitioner withdrew his claim in Point Two of his <u>pro se</u> brief regarding the toxicology report.  (R25, PCR Transcript at 11:18-24).

this Court declines to issue a certificate of appealability
pursuant to 28 U.S.C. § 2253(c)(2).

<u>**CONCLUSION**</u>

For the above reasons, this Court finds that the § 2254
habeas petition should be denied on the merits and a certificate
of appealability will not issue.   An appropriate Order follows.


*S/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.


Dated: